# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO.: 1:14-CR-53-TLS |
| | ) | |
| JODECI ROWLAND-SMITH | ) | |

## OPINION AND ORDER

The Defendant, Jodeci Rowland-Smith, pled guilty to being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). The probation officer drafted a Presentence Investigation Report (PSIR) in preparation for sentencing. This Opinion and Order resolves the Defendant's objection to the PSIR.

## BACKGROUND

The Defendant is a convicted felon. In the evening hours of October 22, 2014, he purchased a box of TulAmmo .380 ACP ammunition at Walmart. The next evening, October 23rd, the Defendant was a passenger in a stolen Chevy Impala. Fort Wayne Police Department Officers began pursuing the Impala, as it had been reported stolen and had possibly been involved in a bank robbery. The driver fled from police through a residential neighborhood. After a short pursuit, the driver lost control and crashed into a garage. The Defendant then exited the vehicle and fled on foot.

The police were able to apprehend and interview one of the other occupants of the vehicle. Through the course of this interview, investigators learned that the Defendant was not the driver of the Impala, but he was one of the passengers who had evaded apprehension by fleeing on foot. They also learned that the Defendant had been staying with his girlfriend at a

residence located on Bridgewater Drive in Fort Wayne. Officers went to the residence and, after obtaining consent to search, located a silver .380 caliber Lorcin handgun under the girlfriend's bed. The magazine located inside the handgun contained 7 cartridges of TulAmmo .380 ACP ammunition. The police also searched the Impala and found a Walmart receipt for the purchase of ammunition and a box labeled TulAmmo .380 ACP ammunition. The box of ammunition contained 41 cartridges of TulAmmo .380 ACP and 5 cartridges of Barnes .380 Auto ammunition.

The Defendant was charged with unlawfully possessing ammunition on October 22, 2014 (Count 1), and with unlawfully possessing a firearm on October 23, 2014 (Count 2). On February 3, 2015, the Defendant entered a plea of guilty to Count 1 of the Indictment. Pursuant to the terms of a Plea Agreement, the Government agreed to dismiss Count 2 of the Indictment at the time of sentencing.

The PSIR includes a four-level enhancement to the base offense level on grounds that the Defendant possessed the firearm in connection with another felony. *See* U.S.S.G. § 2K2.1(b)(6)(B) (providing for increase in base offense level if the defendant used or possessed any firearm "in connection with another felony offense"). The probation officer's basis for applying the enhancement is set forth in paragraph 16 of the PSIR:

> For guideline calculation purposes, offense conduct, including relevant conduct, is the defendant's purchase of the above ammunition as well as his possession of a Lorcin handgun after having been convicted of the above felony. In addition, the defendant was a passenger in the stolen Chevy Impala when the driver fled from police through a residential neighborhood that ended when the driver lost control and crashed into a garage located to the rear of Swinney Avenue. The defendant then fled on foot away from the evidence and returned to his girlfriend's house with the handgun and hid it under the bed in her room. The defendant knew he was a convicted felon and could not possess a firearm or ammunition. The offender was in a stolen vehicle with a firearm and ammunition, which provided

2

ample incentive for him to flee from the police. While the pursuit was through a residential neighborhood and resulted in destruction of personal property, it occurred late at night and was short in duration. Additionally, this officer contacted the case agent who confirmed police officers were unable to pace the vehicle in order to ascertain the driver's speed. As such, this officer does not find that the circumstances rise to the level of reckless endangerment during flight. However, as noted above, the defendant was in possession of a firearm and ammunition during the car chase. Therefore, this officer will consider the fact that the firearm/ammunition facilitated or had the potential to facilitate another felony offense (resisting law enforcement with a vehicle).

(PSIR ¶ 16, ECF No. 33.)

The Defendant objected to the enhancement and requested an evidentiary hearing. (Mot. for Evidentiary Hr'g, ECF No. 37.) The Defendant argued that an evidentiary hearing would establish that the conduct alleged in paragraph 16 of the PSIR occurred on October 23, 2014, but that his offense of conviction, the possession of ammunition, occurred on October 22, 2014. The Defendant also asserted that, even if he had pled guilty to possession of the firearm on October 23, the sentence enhancement should not apply because there is no evidence he knew the vehicle was stolen, that he had control over the vehicle flight, or that "once the flight occurred [he] could have somehow prevailed upon the driver to stop the flight and surrender." (Mot. 2.) The Defendant has since confirmed that he does not believe an evidentiary hearing is necessary, and that the Court can rule on his objection on the basis of what is already provided in the PSIR and his arguments to the Court. (Notice to the Court, ECF No. 47; Def.'s Reply to Gov't's Resp. 1 n.1, ECF No. 49.) The Government, likewise, takes the position that there is sufficient evidence in the record for the Court to rule on the objection and to apply the enhancement.

## ANALYSIS

As relevant here, U.S.S.G. §2K2.1(b)(6)(B) provides for a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." The Guidelines commentary explains that "in connection with" means the enhancement applies if the firearm facilitated, or had the potential of facilitating, another felony offense. U.S.S.G. §2K2.1, cmt. n.14.

In determining whether the enhancement applies, "the court must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles."*Id.* cmt. n.14(E) (citing § 1B1.3(a)(1)–(4) and accompanying commentary). Therefore, the fact that the firearm the Defendant possessed on October 23 is not cited in the offense of conviction does not eliminate that firearm from consideration for the enhancement, as long as the two unlawful possession offenses (the ammunition on October 22 and the firearm on October 23) were "part of the same course of conduct or common scheme of plan." *Id.* cmt. n.14(E)(ii) (citing § 1B1.3(a)(2) and accompanying commentary). The Court finds that the Defendant's purchase and possession of ammunition on October 22 was part of the same course of conduct as his possession of that same ammunition and the firearm the following day. The possessions are related to each other, both in time and by nature, as to warrant the conclusion that they are part of a single episode.

The Court must also resolve whether the Defendant committed another felony offense. The Defendant's Guideline range can be determined based on his "own conduct and conduct that [he] aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 1B1.3(a)(1)(A); *cf.* U.S.S.G. § 2K2.1(b)(6) cmt. n.13(B). "Another felony offense" is defined

as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C). In Indiana, a person commits the offense of resisting law enforcement as a Class A misdemeanor when he flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop. Ind. Code § 35-44-3-3(a)(3). The offense becomes a Class D felony if, while committing it, the person uses a vehicle. Ind Code § 35-44-3-3(b)(1)(A). The Defendant argues that, as a passenger in the fleeing vehicle, he did not have any control over the driver or ability to stop the flight once it began. The Defendant cannot be heard to argue that he did not intend to flee from police, that is, that he did not make a "knowing attempt to escape law enforcement" after becoming "aware that a law enforcement officer has ordered him to stop." *See Wellman v. State*, 703 N.E.2d 1061, 1063 (Ind. Ct. App. 1998) (defining "flight" for purposes of the resisting law enforcement statute). This is because, as soon as the vehicle crashed, the Defendant fled on foot, successfully evading apprehension. If the intent to escape existed seconds after the vehicle stopped, it is reasonable to believe it existed while the Defendant was still an occupant of the car. Fleeing by vehicle and fleeing on foot are not two different species of offenses; the vehicle merely serves to enhance the penalty for fleeing. *See Arthur v. State*, 824 N.E.2d 383, 387 (Ind. Ct. App. 2005) (finding that it was one continuous act of resisting law enforcement when the defendant, who began fleeing in a truck, immediately began to flee on foot when he crashed the truck). The Court finds that the Defendant's flight on foot was not a separate and discrete incident from the vehicle flight, but a continuation of the initial flight. Although the Defendant was not driving the Impala, there is

sufficient evidence to conclude that he did not want to get caught with the gun, and to therefore find it more probable than not that he counseled, commanded, or induced the vehicle flight.

The remaining question is whether the Defendant possessed the firearm "in connection with" the flight. In connection means that the gun "facilitated or had the potential of facilitating" the other felony offense. U.S.S.G. §2K2.1, cmt. n.14(A). The Court considers whether the firearm was "possessed in a manner that permits an inference that it facilitated or potentially facilitated—i.e., had some potential emboldening role in—a defendant's felonious conduct." *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996) (quoting *United States v. Routon*, 25 F.3d 815, 819 (9th Cir. 1994)). For the enhancement to apply, the gun must have had "some purpose or effect in relation to that second crime." *United States v. LePage*, 477 F.3d 485, 489 (7th Cir. 2007).

As an initial matter, the Defendant argues that there is no evidence that he possessed the firearm during the time that he was a passenger in the car. According to the PSIR, the Defendant admitted that (1) he was a passenger in the vehicle during the pursuit; (2) he had possessed the handgun and placed it under the bed before it was found by law enforcement; and (3) he purchased the ammunition from Walmart the previous day. The Court finds that the common sense meaning of his statement to law enforcement that he occupied the fleeing vehicle and had possessed the firearm before placing it under his girlfriend's bed is that he possessed it during the flight earlier that day. This was the interpretation provided in the PSIR, and nothing in the record suggests that the Defendant did not mean, when he made these statements, that he possessed the firearm as he ran from law enforcement. The Government provided this same account of his statements to law enforcement during the change of plea hearing. The Defendant,

in response to a question from the Court, confirmed that there was nothing in the Government's presentation of the evidence that he disagreed with. The Defendant did not attempt to explain then, and does not explain now, why he would have ammunition with him in a car—some of which had already been loaded into his firearm—if he did not also have the firearm. The first time the Defendant even suggested that the facts contained in the PSIR are only speculation is in his final Reply brief. Before that, the Defendant had only challenged the legal basis for the enhancement, not the facts that were cited as a basis for the enhancement. He asserted that the enhancement did not apply because he was not the driver and the flight occurred the day after the possession of ammunition offense to which he pled guilty. The Defendant has had ample opportunity to rebut the information in the PSIR, which this Court finds has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The burden is on the Defendant to show that the PSIR is unreliable or inaccurate, and this burden cannot be met simply by denying the Report's truth. *See United States v. Mustread*, 42 F.3d 1097, 1101–02 (7th Cir. 1994). Accordingly, the Court finds that it is more likely than not that the Defendant possessed the firearm while he was a passenger in the vehicle that fled from police. The Court further finds that, when the Defendant continued his flight on foot, he took the firearm with him to his girlfriend's house and hid it under the bed, where police found it later that day.

As established above, the felonious conduct that Defendant engaged in was his flight from police in a vehicle, which he then continued on foot. It cannot be disputed that, during this flight, the weapon was within easy reach and loaded. As soon as the vehicle crashed, the Defendant was able to escape and to take the gun with him. It was found—still loaded—at his girlfriend's house where he admitted hiding it. Further, it is reasonable to conclude that the

7

loaded firearm gave the Defendant and the driver a sense of security, which emboldened them to attempt to evade arrest, whether that arrest was for stealing a vehicle or possessing a firearm. The acts occurred together, not by mere accident or coincidence, through the deliberate choice to continue illegal conduct, rather than to stop in response to the officers' show of authority. A loaded firearm in the hands of the passenger of a fleeing vehicle serves the purpose of making an attempted escape more likely to succeed. The Defendant did not dispose of the firearm during the pursuit by, for example, tossing it out the window or placing it in an inaccessible place within the car, but held onto it throughout every stage of the pursuit. He thus controlled the gun in way that was intentionally related to the flight, not merely coincidental to it. The Defendant provides no explanation for the purpose behind his possession of a loaded firearm and recently purchased ammunition. Whatever the purposes behind the firearm possession, at least one of those purposes became to embolden the Defendant and to facilitate flight.

Because the Defendant's maintenance of a firearm at a readily accessible location while in a stolen car permits the inference that the firearm emboldened the Defendant to continue his illegal conduct and attempt to evade apprehension, rather than stop and heed officers' commands, the Court finds that the 4-level enhancement applies. The Defendant's objection to the PSIR is overruled.

## CONCLUSION

For the reasons stated above, the Defendant's objection to the PSIR is OVERRULED. At the time of sentencing, the Court will address the Defendant's Sentencing Memorandum [ECF

No. 50], in which the Defendant requests a variance in consideration of 18 U.S.C. § 3553(a)(2) sentencing factors. Sentencing is CONFIRMED for January 26, 2016, at 3:00 PM.

SO ORDERED on December 21, 2015.

s/ Theresa L. Springmann<br>
THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT